UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN SAMUEL FERRARI RIVERA,<br><br>                Petitioner,<br><br>   v.<br><br>BRYAN S. WILCOX, et al.,<br><br>                Respondents. | CASE NO. C19-385-RSM-BAT<br><br>**REPORT AND RECOMMENDATION** |

## INTRODUCTION

John Ferrari Rivera ("Mr. Ferrari") is the sole breadwinner for his wife and severely autistic U.S. citizen son. Mr. Ferrari, who is a citizen of Peru, also came to the United States unlawfully and has been subject to a final order of removal since 1996. Mr. Ferrari failed to depart the United States after he was ordered removed. In 2010, U.S. Immigration and Customs Enforcement ("ICE") arrested him but, after receiving documentation regarding his son's diagnosis and his family situation, released him on an Order of Supervision ("OSUP") in January 2011. Since that time, ICE has granted him two administrative stays of removal and a year-long deferred action. His two most recent requests for stays of removal, however, were denied.

On March 8, 2019, ICE arrested Mr. Ferrari to execute his removal to Peru. On March 15, 2019, he initiated this 28 U.S.C. § 2241 habeas action and sought an immediate stay of

REPORT AND RECOMMENDATION - 1

removal, which the Court granted pending resolution of this action.  In his amended petition, Mr. Ferrari seeks an order enjoining ICE from removing him, arguing that the denial of his most recent application for a stay of removal is arbitrary and capricious under the Administrative Procedures Act ("APA"), 5 U.S.C. § 706.  He also argues that the revocation of his OSUP and subsequent detention were arbitrary, capricious, and an abuse of discretion under the APA.  Finally, Mr. Ferrari challenges the immigration judge's ("IJ") determination that he did not have jurisdiction to release Mr. Ferrari on bond and asks the Court to order his release or a bond hearing.

The Government has moved to dismiss, arguing that the Court does not have jurisdiction to stay Mr. Ferrari's removal and that even if it does, Mr. Ferrari cannot show that his removal or continuing detention are contrary to law.  Dkt. 13; *see also* Dkt. 19.  Mr. Ferrari opposes dismissal.  Dkt. 18.  Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends that the Government's motion to dismiss be granted in part and denied in part, as explained below.

## BACKGROUND[1]

Mr. Ferrari unlawfully entered the United States in 1994 and has never left the country.  Dkt. 11 at ¶ 20; Dkt. 11-1 at 8.  In January 1995, he applied for asylum.  Dkt. 11 at 20.  In October 1996, an IJ denied his application and granted him voluntary departure on or before December 23, 1996, with an alternate order of removal to Peru.  *Id.*; Dkt. 9-2.  Mr. Ferrari did not timely depart or appeal the IJ's decision, and therefore the October 1996 decision became a final order of removal.  Dkt. 11 at ¶ 20.

---

[1] There are some differences between Mr. Ferrari's facts and the Government's, but those differences are immaterial to the outcome of this action.  Where disputed, the Court presents either Mr. Ferrari's facts or both parties' facts.

Mr. Ferrari remained at large until October 2010.[2] *See id.* at ¶ 25. On October 29, 2010, ICE arrested Mr. Ferrari and transferred him to the Northwest Detention Center. *Id.*; Dkt. 11-1 at 8; *see also* Dkt. 9-4. On January 5, 2011, Mr. Ferrari filed his first administrative application for a stay of removal. Dkt. 10 at ¶ 7. ICE granted a 90-day stay to allow Mr. Ferrari time to prepare for his departure from the United States or to have his immigration case reopened. *Id.* On January 7, 2011, ICE released Mr. Ferrari on an OSUP. Dkt. 11 at ¶ 26; Dkt. 11-2 at 11-12; Dkt. 11-11 at 8. On April 25, 2011, Mr. Ferrari filed a second administration application for a stay of removal. Dkt. 11 at ¶ 26; Dkt. 11-1 at 8; Dkt. 9-5. On September 16, 2011, ICE granted him a six-month stay. Dkt. 11 at ¶ 26; Dkt. 11-1 at 8; Dkt. 9-5. On March 1, 2012, Mr. Ferrari filed his third request for an administrative stay of removal. Dkt. 9-7. In February or March 2014, ICE denied the request for a stay but granted Mr. Ferrari one year of deferred action so that he could make all necessary arrangements to depart the United States by February 28, 2015.[3] Dkts. 9-7, 9-8. On January 13, 2015, Mr. Ferrari filed his fourth application for an administrative stay of removal. Dkt. 11 at ¶ 26; Dkt. 9-9. On January 18, 2018, ICE denied the request. Dkt. 9-9; *see also* Dkt. 9-10 (February 6, 2018 letter from ICE explaining decision).[4]

---

[2] During this time, Mr. Ferrari married his wife and they had their son in 2003, who was later diagnosed with severe autism. *See* Dkt. 11-1 at 6, 12. Mr. Ferrari submits extensive documentation regarding his son's autism; the impact of this on their family; the medical treatment, therapy, and special education his son has received in the United States; the conditions for individuals with autism in Peru; the impact of his detention on his son and wife; and the impact his removal will have on his family. *See* Dkt. 11 at ¶¶ 16, 21-26, 34-35; Dkt. 11-1 at 8-28; Dkt. 11-2 at 1-9. The Court is sympathetic to these challenges but does not detail them here because they do not affect the ultimate outcome of this case.

[3] Deferred action is a discretionary determination by the Department of Homeland Security ("DHS") to defer removal of an individual as an act of prosecutorial discretion. Dkt. 10 at ¶ 11. Deferred action does not confer lawful status upon an individual and is granted only for a definite period of time. *Id.* DHS can terminate or renew deferred action at any time at the agency's discretion. *Id.*

[4] According to Mr. Ferrari, he and his attorney were not served with a copy of the denial letter until April 5, 2019. Dkt. 11 at ¶¶ 26, 31; Dkt. 11-1 at 8-9; Dkt. 11-2 at 22. According to Kathleen Lawrence, the Assistant Field Office Director for ICE in Seattle, ICE served the denial letter on Mr. Ferrari in person and mailed a copy to his counsel. Dkt. 10 at ¶ 14.

REPORT AND RECOMMENDATION - 3

1  On March 6, 2018, when Mr. Ferrari reported to ICE as required by his OSUP, ICE
2  instructed him to return on June 12, 2018, with proof of his passport and Peruvian ID.  Dkt. 11-2
3  at 12; *see also* Dkt. 11-1 at 9.  Mr. Ferrari learned he had to renew his Peruvian ID before he
4  could renew his passport.  Dkt. 11-1 at 9.  On June 12, 2018, he showed his Peruvian ID to the
5  ICE officer, who told him that he needed to show by January 17, 2019, that he had applied to
6  renew his passport.  Dkt. 11-1 at 9; Dkt. 11-2 at 12.  On January 17, 2019, Mr. Ferrari's counsel
7  sent a copy of the passport renewal application to ICE, but she mistakenly sent the application to
8  the wrong address.  Dkt. 11-1 at 9; Dkt. 11-2 at 24-28.  Mr. Ferrari then learned he needed to
9  renew his passport in person in San Francisco.  Dkt. 11-1 at 9.

10  On February 20, 2019, when Mr. Ferrari reported to ICE, he was told to return the next
11  day for a phone interview with a Peruvian consular officer, which he did.  Dkt. 11-1 at 9; Dkt.
12  11-2 at 12.  ICE also told Mr. Ferrari to purchase airline tickets to San Francisco and return with
13  his renewed passport by March 21, 2019.  Dkt. 11-1 at 9; Dkt. 11-2 at 12.  On March 8, 2019,
14  Mr. Ferrari reported to ICE to show his airline tickets, and he was arrested and informed that ICE
15  had obtained a travel document to effect his removal to Peru.  Dkt. 11-1 at 9; *see also* Dkt. 11-2
16  at 20.  Mr. Ferrari was then transported to the Northwest Detention Center where he has
17  remained.  Dkt. 11 at ¶ 28.

18  On March 11, 2019, Mr. Ferrari filed another administrative request for a stay of
19  removal, which ICE denied on April 12, 2019.  Dkt. 11 at ¶ 29; Dkt. 10 at ¶ 29.

20  On March 15, 2019, Mr. Ferrari initiated the instant action and requested an immediate
21  stay of removal, which the Court granted.  Dkts. 1, 2, 5.  ICE subsequently cancelled Mr.
22  Ferrari's removal, which had been scheduled for March 22, 2019.  Dkt. 10 at ¶¶ 25, 28.  Mr.
23  Ferrari's travel document expired on April 4, 2019, and ICE has been working on obtaining

REPORT AND RECOMMENDATION - 4

another travel document. *Id.* at ¶ 30.

On April 18, 2019, an IJ denied Mr. Ferrari's request for bond because the immigration court did not have jurisdiction. Dkt. 11-1 at 2.

## DISCUSSION

**A.    The Court does not have jurisdiction to review ICE's denial of his stay request**

The Government argues that 8 U.S.C. § 1252(g) bars the Court from staying Mr. Ferrari's removal, and therefore his habeas petition must be dismissed for lack of subject matter jurisdiction. Dkt. 13 at 8-15. Section 1252(g) states:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen] under this chapter.

8 U.S.C. § 1252(g). Courts have interpreted § 1252(g) narrowly. *Reno v. Am.-Arab Anti-Discrimination Committee*, 525 U.S. 471, 485 n.9 (1999) ("*AADC*"); *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (en banc); *see also Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018). Despite the potentially broad scope of the "arising from" language in the statute, the Supreme Court has construed the provision to apply only to the three discrete actions listed: the commencement of proceedings, adjudication of cases, and execution of removal orders. *AADC*, 525 U.S. at 482 (§ 1252(g) "was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion"); *Jennings*, 138 S. Ct. at 841 ("[In *AADC*, we] did not interpret this language to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves.").

REPORT AND RECOMMENDATION - 5

Courts that have considered the specific issue here—whether federal district courts have jurisdiction to review denials of requests for administrative stays of removal—have held that § 1252(g) strips district courts of jurisdiction. *See, e.g.*, *Balogun v. Sessions*, 330 F. Supp. 3d 1211, 1215 (C.D. Cal. 2018) ("a challenge to ICE's refusal to stay removal is the paradigmatic claim arising from a decision to execute a removal order"); *Albarran v. Wong*, 157 F. Supp. 3d 779, 784-85 (N.D. Ill. 2016) (holding that § 1252(g) prohibits courts from considering challenge to denial of request for administrative stay of removal); *Borodachev v. Rodriguez*, No. 13-1999, 2013 WL 1949844, at *2 (D.N.J. May 8, 2013) ("the denial of a stay is an unreviewable discretionary decision 'to . . . execute removal orders'" (quoting § 1252(g)). And because § 1252(g) precludes habeas jurisdiction, the Court cannot consider Mr. Ferrari's claim under the APA, which incorporates other jurisdiction-stripping statutes as a limit on APA complaints. *See* 5 U.S.C. § 701(a)(1) ("This chapter applies, according to the provisions thereof, except to the extent that . . . statutes preclude judicial review . . . ."); *Balogun*, 330 F. Supp. 3d at 1214 (holding that if court lacks jurisdiction under § 1252(g), it also lacks jurisdiction under the APA); *Albarran*, 157 F. Supp. 3d at 786 ("Because [§ 1252(g)] precludes judicial review, the APA does not apply." (collecting cases)).

Mr. Ferrari fails to cite any analogous case reaching a different result. *See* Dkt. 18 at 5-7. Rather, the cases he cites are readily distinguishable. In *Regents of the University of California v. U.S. Department of Homeland Security*, 908 F.3d 476 (9th Cir. 2018), the Ninth Circuit held that § 1252(g) did not apply to the plaintiffs' challenge to the rescission of the Deferred Action for Childhood Arrivals ("DACA") program, noting that the Supreme Court in *AADC* read § 1252(g) "as responding to litigation of *individual* 'no deferred action' decisions, rather than a programmatic shift like the DACA rescission." *Id.* at 503-04 (emphasis in original). Mr. Ferrari

REPORT AND RECOMMENDATION - 6

1  does not challenge a policy shift, like in *Regents*, and instead challenges an individual decision

2  that falls within the purview of § 1252(g).  The Ninth Circuit's decision in *Catholic Social*

3  *Services, Inc. v. INS*, 232 F.3d 1139 (9th Cir. 2000), is distinguishable for the same reason.  *See*

4  *id.* at 1150 (holding that § 1252(g) did not bar challenge to INS's advance parole policy).  Mr.

5  Ferrari's claim is also unlike the "general collateral challenges" to removal that are independent

6  of the decision to commence proceedings, adjudicate cases, or execute removal orders, like in

7  *Walters v. Reno*, 145 F.3d 1032, 1052 (9th Cir. 1998).  *See Balogun*, 330 F. Supp. 3d at 1216

8  (distinguishing *Walters*).  And *Kwai Fun Wong v. United States*, 373 F.3d 952 (9th Cir. 2004),

9  does not support Mr. Ferrari's claim of jurisdiction because it involved actions that occurred

10 prior to any decision to "commence proceedings," and therefore fell outside the scope of §

11 1252(g).  *See Balogun*, 330 F. Supp. 3d at 1217 (distinguishing *Wong*).

12     Finally, none of the district court cases Mr. Ferrari cites involved denials of requests for

13 administrative stays of removal.  *See Ramierz Medina v. U.S. Dep't of Homeland Sec.*, No. 17-

14 0218, 2017 WL 5176720, at *8 (W.D. Wash. Nov. 8, 2017) (finding jurisdiction over narrow

15 issue presented, namely "whether Defendants complied with their own non-discretionary

16 procedures when taking Plaintiff into custody and questioning him at the Tukwila facility, which

17 then led to the issuance of an NTA, rescission of his work authorization and, ultimately,

18 termination of his DACA status"); *Gonzales Torres v. U.S. Dep't of Homeland Sec.*, No. 17-

19 1840, 2017 WL 4340385, at * 4 (S.D. Cal. Sept. 29, 2017) (finding jurisdiction over challenge to

20 the non-discretionary process by which the plaintiff's DACA status was terminated); *Coyotl v.*

21 *Kelly*, 261 F. Supp. 3d 1328, 1339-41 (N.D. Ga. 2017) (same); *Fatty v. Nielsen*, No. 17-1535,

22 2018 WL 3491278, at *2 (W.D. Wash. July 20, 2018) ("Were Mr. Fatty challenging his removal

23 or the discretionary denial of his request for a stay of removal, review of that challenge clearly

REPORT AND RECOMMENDATION - 7

would be precluded by Section 1252(g). However, Mr. Fatty's claims are more properly categorized as collateral legal and constitutional challenges to the process by which the government seeks to remove him."); *Beltran Prado v. Nielsen*, 379 F. Supp. 3d 1161, 1168 (W.D. Wash. 2019) (finding jurisdiction to stay removal pending resolution of a motion to reopen); *Diaz-Amezcua v. Barr*, --- F. Supp. 3d ----, 2019 WL 4261805, at *3-*4 (W.D. Wash. Apr. 26, 2019) (holding that § 1252(g) barred jurisdiction but that court could assume jurisdiction under the Suspension Clause).

In sum, the Court does not have jurisdiction to consider Mr. Ferrari's challenge to the denial of his requests for administrative stays of removal.

**B.  The Court has jurisdiction to review the revocation of Mr. Ferrari's OSUP**

Unlike his challenge to ICE's decision to deny his administrative request for a stay of removal, Mr. Ferrari's challenge to the revocation of his OSUP does not attack ICE's decision to execute his removal order; rather, he challenges his detention prior to his removal. Such claims may be brought through a habeas petition. *See Jennings*, 138 S. Ct. at 840-841 (finding jurisdiction over challenge to interpretation of pre-removal order detention statute); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (habeas remains "the basic method for obtaining review of continued custody" after a removal order is final); *Singh v. Holder*, 638 F.3d 1196, 1211 (9th Cir. 2011) (as a general rule, noncitizens "may continue to bring collateral legal challenges to the Attorney General's detention authority . . . through a petition for habeas corpus" (quotation omitted, alteration in original)); *Aguilar v. U.S. ICE Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 11 (1st Cir. 2007) ("[D]istrict courts retain jurisdiction over challenges to the legality of detention in the immigration context."); *Alam v. Nielsen*, 312 F. Supp. 3d 574, 579-81 (S.D. Tex. 2018) (finding jurisdiction over challenge to process ICE followed in cancelling petitioner's

REPORT AND RECOMMENDATION - 8

OSUP and returning him to detention); *Rombot v. Moniz*, 299 F. Supp. 3d 215, 17 (D. Mass. 2017) (finding jurisdiction over challenge to revoking OSUP); *Chhoeun v. Marin*, No. 17-1898, 2018 WL 1941756, at *4-*5 (C.D. Cal. Mar. 26, 2018) (same); *Doe v. Smith*, No. 18-11363, 2018 WL 4696748, at *6 (D. Mass. Oct. 1, 2018) (same); *Ahmad v. Whitaker*, No. 18-287, 2018 WL 6928540, at *4 (W.D. Wash. Dec. 4, 2018), *R & R adopted*, 2019 WL 95571 (W.D. Wash. Jan. 3, 2019) (same). As Mr. Ferrari's challenge to the revocation of his OSUP falls outside the narrow scope of § 1252(g), the Court has jurisdiction over these claims.

**C.    Revocation of Mr. Ferrari's OSUP and his continued detention**

Mr. Ferrari argues that ICE does not have the authority to detain him. Dkt. 18 at 14-17. Title 8 U.S.C. § 1231 governs the detention and release of noncitizens, like Mr. Ferrari, who have been ordered removed. Under § 1231(a), DHS[5] is required to detain a noncitizen during the "removal period," which in this case expired years ago. *See* 8 U.S.C. §§ 1231(a)(2), (a)(1)(B). After the removal period ends, DHS has the discretionary authority to continue to detain certain noncitizens or to release them on supervision:

> [A noncitizen] ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by [DHS] to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period . . . .

8 U.S.C. § 1231(a)(6). Mr. Ferrari contends that he does not fall within any of these categories and therefore his detention is improper. *See* Dkt. 18 at 18. Mr. Ferrari is incorrect. The IJ

---

[5] Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107-296 § 471, 116 Stat. 2135 (2002), transferred most immigration law enforcement functions from the Department of Justice ("DOJ") to DHS, while the DOJ's Executive Office for Immigration Review retained its role in administering immigration courts and the Board of Immigration Appeals. *See Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003).

REPORT AND RECOMMENDATION - 9

ordered him removed because he entered the United States without inspection, *see* Dkt. 9-3 at 2, which falls under § 1182. *See* 8 U.S.C. § 1182(a)(6)(A)(i) ("[A noncitizen] present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible."). Therefore, he is properly detained under § 1231(a)(6).

Mr. Ferrari also argues that ICE did not comply with the applicable regulations when it revoked his release on supervision. Dkt. 18 at 17-19. With respect to revoking release, the regulations governing continued detention under § 1231(a)(6) provide:

> The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody [a noncitizen] previously approved for release under the procedures in this section. A district director may also revoke release of [a noncitizen] when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:
>
> (i) The purposes of release have been served;
>
> (ii) The [noncitizen] violates any condition of release;
>
> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against [a noncitizen]; or
>
> (iv) The conduct of the [noncitizen], or any other circumstance, indicates that release would no longer be appropriate.

8 C.F.R. § 1241.4(l)(2). Because ICE had denied Mr. Ferrari's request for a stay of removal, obtained a travel document, and scheduled his removal, ICE properly revoked Mr. Ferrari's release pursuant to § 1241.4(1)(2)(iii).

Finally, Mr. Ferrari requests a bond hearing, arguing that the IJ improperly found he lacked jurisdiction to grant Mr. Ferrari release on bond at his April 18, 2019 bond hearing. In *Diouf v. Napolitano* ("*Diouf II*"), 634 F.3d 1081 (9th Cir. 2011), the Ninth Circuit held that "an

REPORT AND RECOMMENDATION - 10

individual facing prolonged immigration detention under 8 U.S.C. § 1231(a)(6) is entitled to release on bond unless the government establishes that he is a flight risk or a danger to the community." *Id.* at 1082. Specifically, the court held that the government must provide a custody hearing before an IJ to noncitizens who are denied release in their six-month DHS custody reviews and whose release or removal is not imminent. *Id.* at 1091-92 ("When detention crosses the six-month threshold and release or removal is not imminent, the private interests at stake are profound. Furthermore, the risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial."); *see also id.* at 1092 n.13 ("As a general matter, detention is prolonged when it has lasted six months and is expected to continue more than minimally beyond six months."). The IJ did not erroneously deny Mr. Ferrari's request for release on bond because Mr. Ferrari had not yet been detained for 180 days.[6] Now, however, Mr. Ferrari has been detained for a prolonged period of time. Accordingly, the Court recommends that ICE be ordered to provide Mr. Ferrari with a bond hearing within 30 days of the order on this Report and Recommendation or release him from immigration detention.

## CONCLUSION AND RIGHT TO OBJECT

The Court recommends that the Government's motion to dismiss, Dkt. 13, be **GRANTED** and Mr. Ferrari's habeas be **DENIED** as to Mr. Ferrari's challenge to the denial of his requests for administrative stays of removal, the revocation of his order of supervision, and his current detention. The Court further recommends that the Government's motion to dismiss be **DENIED** and Mr. Ferrari's habeas petition be **GRANTED** as to Mr. Ferrari's request for a bond hearing. Specifically, within 30 days of the order on this Report and Recommendation, the

---

[6] Mr. Ferrari contends the IJ erred in finding no jurisdiction because detention under § 1231(b)(6) is discretionary. But the discretion under § 1231(b)(6) is delegated to DHS, not IJs. Therefore, the IJ did not err.

REPORT AND RECOMMENDATION - 11

Government should be ordered to provide Mr. Ferrari with a bond hearing pursuant to *Diouf II* or release him from immigration detention. Finally, the Court recommends that the temporary stay of removal be **VACATED**.

This Report and Recommendation is not an appealable order. Therefore a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case. Objections, however, may be filed and served upon all parties no later than **October 9, 2019**. The Clerk should note the matter for **October 11, 2019**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed 12 pages. The failure to timely object may affect the right to appeal.

DATED this 24th day of September, 2019.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge